UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| In re: ) | |
| ) | |
|    CHARUVAN SUPANATE MANEGAN ) | Case No. 06-10092-SSM |
| ) | Chapter 7 |
| Debtor ) | |
| ) | |
| MONEY ONE FEDERAL CREDIT UNION ) | |
| ) | |
| Plaintiff ) | |
| ) | |
| vs. ) | Adversary Proceeding No. 06-1098 |
| ) | |
| CHARUVAN MANEGAN ) | |
| ) | |
| Defendant ) | |

**MEMORANDUM OPINION**

Before the court is the defendant's motion for summary judgment. This is an action by a credit card issuer, Money One Federal Credit Union ("Money One") to determine the dischargeability of $21,395.34 in cash advances and other charges. The issue is whether Money One has made out a prima facie case that it justifiably relied on the debtor's implied representation that she intended to repay the advances at the time they were made. The court heard oral argument from the parties on September 19, 2006. For the reasons stated, the court determines that, with the exception of one charge within the statutory presumption period, Money One has not shown that there is a genuine issue for trial on the element of reliance. Since Money One has the burden of proof on that issue, summary judgment will be entered in favor of the debtor.

1

Background

Charuvan Supanate Manegan ("the debtor") filed a voluntary petition in this court on February 10, 2006 for relief under chapter 7 of the Bankruptcy Code and was granted a discharge of her dischargeable debts on May 25, 2006. The present action was commenced by Money One on April 4, 2006. The complaint alleges that the debtor opened a Visa card account with Money One in 2001,[1] and that during the 13 months prior to the filing of his bankruptcy petition, a total of $28,975.71 in charges and cash advances were posted to the account. Nine of the charges, totaling $11,719.61, were made at Global Cash Access, Charles Town, West Virginia. Three charges, totaling $7,434.97, were made at Cash Systems, Inc., Dover Downs, Delaware. Two charges, totaling $2,609.98, were made at Global Cash Access, Las Vegas, Nevada. Two cash advances were taken—one within 50 days of the bankruptcy filing—totaling $5,000.00. And finally, there were two small charges totaling $114.87, one at a tobacco store and one at a motel. All of this was at a time, according to the complaint, that the debtor's annual income was only $25,475 and his annual expenses (exclusive of payments to Money One) were $27,776. Except for the one cash advance of $2,000.00 made 50 days before the bankruptcy filing, all the remaining charges were incurred in the period from 128 to 409 days before the filing of the petition. The complaint seeks a determination that the debtor's liability to Money One is non-dischargeable under § 523(a)(2), Bankruptcy Code, which excepts from discharge debts for money loaned or an extension of credit to the extent obtained by false pretenses, false representations, or actual fraud.

---

[1] The complaint recites that the application for the account and a document evidencing approval of the account are attached as exhibits to the complaint. However, no such exhibits are attached to the copy in the court's file. Since the defendant has not complained of the omission, the court assumes the defendant was served or otherwise provided with copies.

The debtor filed a timely answer denying the debt was non-dischargeable and affirmatively asserting that all but two of the charges and cash advances "were taken at the time and place of a game, race, sport and/or pastime for the purpose of gaming, betting or wagering" and that any contract to repay such sums was therefore void and unenforceable under § 11-14, Code of Virginia. After answering the complaint, the debtor served interrogatories and requests for production of documents on Money One. Two of the interrogatories sought discovery of the evidence Money One would present to show that its reliance on the alleged false statements respecting the debtor's financial condition was reasonable and that its reliance on other alleged false representations was justifiable. Deft. Interrogatory No. 2 and 3. To each interrogatory Money One responded only, "This interrogatory requests a legal explanation which is attorney-client privileged." The debtor then filed the present motion for summary judgment asserting that the plaintiff has not shown that it either reasonably or justifiably relied on any alleged misrepresentation.

Discussion

I.

Summary judgment is proper if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). In ruling on a motion for summary judgment, a court should believe the evidence of the non-movant, and all justifiable inferences must be drawn in his favor. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. *Id.* at 248, 106 S.Ct. at 2510. Although a moving defendant has the burden of showing

that there is no genuine issue of fact, the plaintiff is not thereby relieved of its own burden of producing evidence that would support a jury verdict in his favor. *Id.* at 256, 106 S.Ct. at 2514. In meeting this burden, the plaintiff may not rely upon the mere allegations of its pleadings but must, "by affidavits or as otherwise provided [in Rule 56] . . . set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). Summary judgment is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed "to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327, 106 S.Ct. 2548, 2555, 91 L.Ed.2d 265 (1985).

II.

To place the present motion in perspective requires a brief discussion of dischargeability as it relates to credit card charges and cash advances. A chapter 7 discharge does not discharge an individual debtor from debts

> for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by—
> (A) false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition; [or]
> (B) use of a statement in writing—
> (i) that is materially false;
> (ii) respecting the debtor's or an insider's financial condition;
> (iii) on which the creditor to whom the debtor is liable for such money, property, services, or credit reasonably relied; and
> (iv) that the debtor caused to be made or published with intent to deceive.

§ 523(a)(2), Bankruptcy Code. Certain types of credit card charges are presumed to fall within § 523(a)(2)(A), although the presumption can be rebutted:

> (I) consumer debts owed to a single creditor and aggregating more than $500 for luxury goods or services incurred by an individual debtor on or within 90 days before the order for relief are presumed to be nondischargeable; and
>
> (II) cash advances aggregating more than $750 that are extensions of consumer credit under an open end credit plan obtained by an individual debtor on or within

4

>  70 days before the order for relief under this title, are presumed to be nondischargeable[.]

§ 523(a)(2)(C)(i)(A), Bankruptcy Code.

It is important to note that different standards apply depending on whether or not the false statement is one "respecting the debtor's ... financial condition." *Id.* If it is, the statement must be in writing and the creditor must have "reasonably" relied on it. § 523(a)(2)(B), Bankruptcy Code. Other types of misrepresentations need not be in writing and the creditor's reliance need only be "justifiable," which is a lesser standard than "reasonable." § 523(a)(2)(A), Bankruptcy Code; *Field v. Mans*, 516 U.S. 59, 116 S. Ct. 437, 133 L. Ed. 2d 351 (1995). To show actual fraud under § 523(a)(2)(A), the creditor must prove the following elements: "(1) a fraudulent misrepresentation; (2) that induces another to act or refrain from acting; (3) causing harm to the plaintiff; and (4) the plaintiff's justifiable reliance on the misrepresentation." *Foley & Lardner v. Biondo (In re Biondo)*, 180 F.3d 126, 134 (4th Cir. 1999).[2] The burden of proof is on the plaintiff, and the standard of proof is preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 111 S. Ct. 654, 112 L. Ed. 2d 755 (1991).

With respect to the first element—a false representation—the majority of courts have held that with the use of a credit card the credit card holder represents that he or she has the

---

[2] Although the phraseology is different, the test in *Biondo* is essentially identical to the common-law formulation as set forth in the Restatement (Second) of Torts, which the Supreme Court in *Field v. Mans* assumed that Congress had in mind when enacting § 523(a)(2):

> One who fraudulently makes a misrepresentation of fact, opinion, intention or law for the purpose of inducing another to act or to refrain from action in reliance upon it, is subject to liability to the other in deceit for pecuniary loss caused to him by his justifiable reliance upon the misrepresentation.

Restatement (2nd) of Torts § 525 (1977); *Field v. Mans,* 516 U.S. at 69, 116 S. Ct. at 443-44.

5

*intention* to pay for the goods and services. *Bank of Virginia v. Davis (In re Davis)*, 42 B.R. 611, 613 (Bankr. E.D. Va. 1984). Some courts, indeed, have gone further and have held that use of a credit card is also a representation of *ability* to pay for the goods and services. *Id.* I have previously explained, however, why use of a credit card does not create an actionable representation of ability to pay. *AT&T Universal Card Svcs. Corp. v Aguero (In re Aguero)*, No. 96-14256-SSM, 96-1326, 1997 WL 633276 at *3 n.2 (Bankr. E.D. Va., September 16, 1997).[3] This is because, under the dichotomy created by § 523(a)(2)(A) and (B), a false representation concerning the debtor's financial condition is actionable as a basis for nondischargeability only if the representation is in writing. *Engler v. Van Steinburg (In re Van Steinburg)*, 744 F.2d 1060 (4th Cir.1984) (holding that false oral statement that collateral being offered as security was unencumbered was a statement concerning the debtor's financial condition and was therefore not a basis for holding the debt nondischargeable because it was not in writing). Accordingly, since even an *express* statement by a debtor, "I have the ability to pay this debt," would not be grounds for holding the resulting debt nondischargeable if the statement were not in writing, it follows that a representation of financial condition that is merely *implied* from the circumstances does not provide a basis for excluding a debt from discharge, with the exception of those eve-of-bankruptcy charges and cash advances that are presumed to be nondischargeable under § 523(a)(2)(C).

     For a misrepresentation to be fraudulent, the debtor must have known it to be false at the time it was made, and the debtor must have made the representation with the intention and purpose of deceiving the creditor. In this connection, "[c]ourts have recognized that it is nearly

---

[3] The *Aguero* opinion, although unpublished, is available on this court's Internet Web site at http://www.vaeb.uscourts.gov/opinions/ssm/aguero.pdf

impossible to adduce direct proof of an individual's knowledge, intention and purpose. Therefore, case law has developed a list of objective or circumstantial factors which a creditor might use to prove [those] elements." *FCC National Bank v. Willis (In re Willis)*, 190 B.R. 866, 868 (Bankr. W.D. Mo. 1996). A representative list of such factors is the following:

>    1. The length of time between the charges made and the filing of bankruptcy;
>
>    2. Whether or not an attorney has been consulted concerning the filing of bankruptcy before the charges are made;
>
>    3. The number of charges made;
>
>    4. The amount of the charges;
>
>    5. The financial condition of the debtor at the time the charges are made;
>
>    6. Whether the charges were above the credit limit of the account;
>
>    7. Whether the debtor made multiple charges on the same day;
>
>    8. Whether or not the debtor was employed;
>
>    9. The debtor's prospects for employment;
>
>    10. The debtor's financial sophistication;
>
>    11. Whether there was a sudden change in the debtor's buying habits; and
>
>    12. Whether the purchases were made for luxuries or necessities.

*Id.* at 869.

With respect to the element of reliance, some opinions issued before the Supreme Court's decision in *Field v. Mans* had held, seemingly as a matter of law, that a credit card issuer relies on the debtor's implied representations of intent and ability to pay in extending credit. *In re Davis,* 42 B.R. at 613. In light of *Field v. Mans*, however, it seems clear that justifiable reliance cannot

simply be implied from the debtor's use of the card, and the card issuer's acceptance of the charges. *In re Aguerro* at *4. Rather, the plaintiff has the burden of presenting affirmative evidence to satisfy that element. *In re Willis,* 190 B.R. at 870 ("[A] creditor which relies on a debtor's representations must show that such reliance was justified based on the facts available to the creditor at the time the card was used.") One widely-used standard that has been adopted is as follows:

> [T]he credit card issuer justifiably relies on a representation of intent to repay as long as the account is not in default and any initial investigations into a credit report do not raise red flags that would make reliance unjustifiable.

*American Express Travel Related Services Co., Inc. v. Hashemi (In re Hashemi)*, 104 F.3d 1122 (9th Cir. 1997). However, in cases tried before the author of this opinion, some card issuers have gone further and have presented evidence, for example, that they pulled monthly credit reports to determine that the card holder's credit score had not dropped below a threshold level.

III.

It is in light of these principles that the court considers the impact of Money One's failure to identify *any* basis for either justifiable or reasonable reliance in response to the debtor's express request for that information. As noted, except for the one charge that occurred within the statutory presumption period, Money One will have the burden at trial of proving that it justifiably relied on the implied representation of intent to pay. It is fundamental that a defendant has the right to require the plaintiff, in discovery, to disclose all facts and documents upon which the plaintiff will rely at trial. Rule 26(b)(1), Fed.R.Civ.P. An interrogatory, moreover, is not necessarily objectionable merely because the answer "involves an opinion or contention that relates to fact or the application of law to fact." Rule 33(c), Fed.R.Civ.P. In short, a party may properly require an opponent to disclose its theory of the case. Here,

however, the only response to the interrogatory was the information requested was protected by *the attorney-client privilege.*[4] If so, it is necessarily information that Money One will not present or rely upon at trial. The attorney-client privilege is intended to protect information the *client* has provided to the attorney in order to obtain legal advice and under an understanding that it will not disclosed to anyone else.[5] Information that the client intends for the attorney to use at trial is by very definition not protected by the attorney-client privilege, since the privilege extends only to facts that the client wishes to keep secret. When Money One responded to the debtor's interrogatories by asserting that any information concerning its reliance on the alleged misrepresentations was protected by the attorney-client privilege, it was effectively stating that any such information was secret and would not be presented at trial. Since Money One cannot prevail at trial without presenting some evidence of reliance, it follows that Money One has not carried its burden of showing that it has evidence sufficient to make a prima facie case at trial.

---

[4] In this connection, the court notes that the response failed to comply with Rule 26(b)(5), which requires a party withholding information that is otherwise discoverable by claiming that it is privileged to "describe the nature of the documents, communications, or things not produced or disclosed in a matter that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege[.]"

[5] The classic formulation of the privilege is that of Professor Wigmore:

> (1) Where legal advice of any kind is sought (2) from a professional legal adviser in his capacity as such, (3) the communications relating to that purpose (4) are made in confidence (5) by the client, (6) are at his instance permanently protected (7) from disclosure by himself or by the legal (8) except the protection be waived.

8 J. Wigmore, Evidence § 2292 at 554 (McNaughten rev. ed. 1961). *See U.S. v. Jones,* 696 F.2d 1069, 1072 (4th Cir. 1982) (explaining that attorney-client privilege applies only if holder is or sought to become a client; the recipient is and was acting as a lawyer; the communication relates to a fact of which attorney was informed for purpose of securing legal opinion, services, or assistance and not for committing crime or tort; and privilege has been claimed and not waived.)

For that reason, the defendant's motion for summary judgement will be granted, except for the one charge made within the statutory presumption period, and which the debtor has conceded is nondischargeable.

     A separate order will be entered consistent with this opinion.

Date: November 24, 2006             */s/ Stephen S. Mitchell*
                                       Stephen S. Mitchell
Alexandria, Virginia              United States Bankruptcy Judge

                   Entered on Docket: *November 24, 2006*

Copies to:

Madeline A. Trainor, Esquire
Cyron & Miller, LLP
100 N. Pitt Street, Suite 200
Alexandria, VA 22314
Counsel for the plaintiff

Diana C. Theologou, Esquire
O'Reilly & Mark, P.C.
11200 Rockville Pike, Suite 301
North Bethesda, MD 20852
Co-counsel for the plaintiff

Robert R. Weed, Esquire
Law Offices Of Robert Weed
7900 Sudley Road, Suite 409
Manassas, VA 20109
Counsel for the debtor-defendant

Charuvan Supanate Manegan
3701 So. George Mason Drive #1801N
Falls Church, VA 22046
Debtor-defendant